# IN THE COURT OF APPEALS OF IOWA

No. 19-1613
Filed February 3, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL D. MONTGOMERY,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Sioux County, Julie Schumacher, Judge.

The defendant appeals from his conviction of second-degree sexual abuse.

**AFFIRMED.**

Michael J. Jacobsma of Jacobsma Law Firm, P.C., Orange City, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Greer, JJ. Schumacher, J., takes no part.

**GREER, Judge.**

A jury convicted Michael Montgomery of second-degree sexual abuse and acquitted him of lascivious acts with a child. He appeals from his conviction, arguing (1) the jury rendered inconsistent verdicts and the court should overrule *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994), which provides that finding contact constitutes a "sex act" requires that the contact be "sexual in nature" but not that the act was done with the intent of sexual gratification; (2) the court erred in refusing to give a supplemental instruction after the jury asked for clarification on a jury instruction; (3) the court abused its discretion in excluding evidence under the rape-shield law; (4) the prosecutor engaged in misconduct by vouching for the complaining witness's credibility during the State's closing argument; and (5) the evidence presented at trial is insufficient to support his conviction and is contrary to the weight of the evidence.

**Background Facts and Proceedings.**

S.V., who is a young female relative of Montgomery, went to her guidance counselor in May 2018 and reported Montgomery had been touching her sexually. The guidance counselor alerted authorities, and S.V. was interviewed at a local child protection center (CPC).

Montgomery voluntarily spoke to police. While he denied inappropriately touching S.V., Montgomery told the police S.V. was probably "misconstruing" other incidents, such as the time she crawled into bed with him and his wife and then took his hand and placed it "between her legs" or the time she climbed into the shower while he was showering.

Montgomery was charged with sexual abuse in the second degree and lascivious acts with a child. He entered pleas of not guilty.

Leading up to the August 2019 trial, Montgomery moved to admit evidence pursuant to Iowa Rule of Evidence 5.412—also known as the rape-shield law. Montgomery sought to introduce evidence "S.V. was sexually victimized by another individual during the same time period that S.V. claims she was sexually abused by the defendant." Montgomery argued the evidence was admissible under exceptions to the rape-shield law in Iowa Rule of Evidence 5.412(b)(1)(A) and (C).[1] The court denied Montgomery's request, concluding rule 5.412(b)(1)(A) did not apply because there was no evidence of semen, injury, or other physical evidence. It also concluded Montgomery's "constitutional rights to confrontation and due process do not require [the evidence] be presented to the jury" and denied his request under rule 5.412(b)(1)(C).

S.V., who was then eleven years old and getting ready to enter sixth grade, testified at trial. She testified Montgomery "touched [her] sexually inappropriately" during sleepovers at his home when she was in third and fourth grade. She testified Montgomery and his wife "would want to watch TV with us in their bed

---

[1] In a criminal proceeding involving alleged sexual abuse, rule 5.412 generally prohibits the introduction of evidence of "a victim's other sexual behavior." That said, the rules provides some specific exceptions in cases of criminal trials (when the defendant uses the proper procedure to determine admissibility prior to trial). The exceptions at issue here are

> (A) Evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence.
> . . . .
> (C) Evidence whose exclusion would violate the defendant's constitutional rights.

Iowa R. Evid. 5.412(b)(1)(A), (C).

before bed" and she would often fall asleep while lying there. S.V. testified Montgomery "licked [her] back," "[t]ried sticking fingers in [her] mouth," and touched her vagina with his finger and tongue. She also testified he would remove her pajamas and made her touch his penis, which she described as "textured" and "[m]uscly." Three other witnesses, two children and S.V.'s mother, testified S.V. first told them Montgomery was touching her sexually years before she reported it to her guidance counselor. Another witness, Teresa, who was a family friend of Montgomery, testified she confronted Montgomery after she heard about the allegations and "he said that he didn't do anything that [S.V.] didn't initiate first."

The jury acquitted Montgomery of lascivious acts with a child but convicted him of sexual abuse in the second degree. He was later sentenced to twenty-five years in prison. He appeals.

**Analysis.**

**Inconsistent Verdicts.** Montgomery claims the jury rendered inconsistent verdicts by acquitting him of lascivious acts with a child while finding him guilty of second-degree sexual abuse. His main focus, though, is urging us to overrule *Pearson* and hold that a conviction for sexual abuse requires a determination that contact that constitutes a sex act must be done with the intent for sexual gratification. *See* Iowa Code § 709.1(3) (2015)[2] ("Any sex act between persons is sexual abuse . . . when the act is performed with the other person [and] [s]uch other person is a child"); *see also Pearson*, 514 N.W.2d at 455 (providing that

---

[2] The jury was instructed it had to find Montgomery committed these acts between February 1, 2015, and August 16, 2016, so it is unclear whether the 2015 or 2016 Code is in force. As there have been no amendments to the pertinent sections, we refer to the 2015 Code.

whether contact constitutes a "sex act" depends on whether the contact was "sexual in nature," which includes the consideration of, but does not require a finding that, the contact was made to arouse or satisfy sexual desires of the defendant or the victim").

Considering Montgomery's second argument first, it is not clear it is preserved for our review. Montgomery did not raise overruling *Pearson* until he filed a combined motion in arrest of judgment and motion for new trial. In other words, he never raised the issue before or during his trial.[3] "Objections should be raised at the earliest time at which error became apparent in order to properly preserve error. Motion for new trial ordinarily is not sufficient to preserve error where proper objections were not made at trial." *State v. Steltzer*, 288 N.W.2d 557, 559 (Iowa 1980); *but see State v. Williams*, 895 N.W.2d 856, 859 n.2 (Iowa 2017) ("[I]t would make little sense to require a party to argue existing law should be overturned before a court without the authority to do so."). Still, even if we assume Montgomery preserved error by filing his post-trial motions, we lack the authority to overturn supreme court precedent. *See Figley v. W.S. Indus.*, 801 N.W.2d 602, 608 (Iowa Ct. App. 2011) (refusing to consider a claim because it was not properly raised in an appellate brief and "more critically, we are not at liberty to

---

[3] We recognize that during deliberation, the jury submitted a question for clarification over this sentence in an instruction, "You may consider the type of contact and the circumstances surrounding it in deciding whether the contact was sexual in nature." Montgomery then told the court he believed the jury should be instructed, "'[S]exual in nature' means that the action has to be for the purpose of satisfying the sexual desire of the defendant." But is not clear Montgomery realized he was asking the court to overturn precedent by providing such an instruction, and he made no argument why a change in law would be appropriate. Montgomery did not submit a proposed jury instruction before the trial on the issue.

overturn precedent of our supreme court"); *see also State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

The State does not dispute, and we agree, Montgomery's claim the jury rendered inconsistent verdicts is preserved for our review. *See State v. Scholtes*, No. 16-1967, 2017 WL 3525296, at *1 (Iowa Ct. App. Aug. 16, 2017) (concluding error was preserved on an inconsistent-verdicts claim because defendant raised it in a motion in arrest of judgment and motion for new trial); *cf. Brooks v. State*, No. 16-0710, 2017 WL 2461504, at *6 n.3 (Iowa Ct. App. June 7, 2017) (finding inconsistent-verdicts issue was preserved by first raising the issue in a motion for new trial when the parties had agreed to a sealed verdict, so the jury could not be polled or sent back for further deliberations).

Here, the jury was instructed that to convict Montgomery of lascivious acts with a child, it had to find the following:

> 1. On or between February 1, 2015, and August 16, 2016, Michael Montgomery with or without S.V.'s consent:
> a. fondled or touched the pubes or genitals of S.V.; or
> b. permitted or caused S.V. to fondle or touch Michael Montgomery's genitals or pubes.
> 2. Michael Montgomery did so with the specific intent to arouse or satisfy the sexual desires of himself or S.V.
> 3. Michael Montgomery was then 18 years of age or older.
> 4. S.V. was then under the age of 14 years.
> 5. Michael Montgomery and S.V. were not then married to each other.

In contrast, to convict Montgomery of second-degree sexual abuse, the jury only had to find that "[o]n or between February 1, 2015, and August 16, 2016, Michael Montgomery did commit a sex act with S.V." and "Michael Montgomery performed

the sex act while S.V. was under the age of 12 years." The jury was also instructed that "sex act" means any sexual contact:

> Between the mouth of one person and the genitals of another; or
> Between the finger or hand of one person and the genitals or anus of another person.
> You may consider the type of contact and the circumstances surrounding it in deciding whether the contact was sexual in nature.

While lascivious acts with a child requires a finding Montgomery acted "with the specific intent to arouse or satisfy the sexual desires of himself or S.V.," second-degree sexual abuse contains no such element.[4]

Montgomery uses imprecise language, but we understand his argument to be that it is factually inconsistent for the jury to conclude Montgomery committed one of the outlined sex acts while also finding he did so without the intent to sexually gratify himself or S.V. *See State v. Halstead*, 791 N.W.2d 805, 807 (Iowa 2010) (noting the term "'inconsistent verdicts' is often used in an imprecise manner and may include a wide variety of related, but nonetheless distinct, problems" including factual inconsistencies or legal inconsistencies). In his appellate reply brief, Montgomery argues it "strains credulity" to believe the jury concluded Montgomery made contact with S.V.'s vagina but did so without the intent of arousing his sexual desires.

First, we note that this is a not a case of "true" or "compound inconsistency." *See id.* at 808 (labeling a case that involves a single defendant who is convicted of a compound crime and acquitted of the predicate crime in a single proceeding

---

[4] The other elements of lascivious acts with a child were not in dispute. At the trial in 2019, S.V. was only eleven; Montgomery is her adult relative; and the two have never been married.

as "true inconsistency" or "compound inconsistency"). It is not impossible as a matter of law to find Montgomery committed second-degree abuse, which shares some elements of lascivious acts with a child but not all of them, while concluding he did not commit lascivious acts with a child. And lascivious acts with a child is not a predicate offense of second-degree sex abuse. *Cf. id.* at 816 (reversing defendant's conviction for assault while participating in a felony because the jury acquitted the defendant of the felony, making his assault conviction "truly inconsistent"). Thus, in determining whether these verdicts were inconsistent, we consider "whether the verdict is so logically and legally inconsistent as to be irreconcilable within the context of the case." *State v. Merrett*, 842 N.W.2d 266, 275–76 (Iowa 2014) (citation omitted).

Based on its acquittal of Montgomery of lascivious acts with a child, it seems the jury did not credit all details of S.V.'s testimony. *See State v. Doorenbos*, No. 19-1257, 2020 WL 3264408 at *4 (Iowa Ct. App. June 17, 2020) ("While it may be surprising for jurors to credit only part of a witness's testimony, that is their function."). Still the jury had Montgomery's own admissions to weigh. After S.V. alleged to her guidance counselor that Montgomery touched her sexually, the local police interviewed Montgomery. The jury viewed the video of this interview, during which Montgomery told officers that one time, when she was about seven years old, S.V. climbed into bed with Montgomery and his wife and, after doing so, took his hand and "put it down between her legs." According to what he told officers, Montgomery took his hand away, but then S.V. placed his hand between her legs

a second time.[5]  Montgomery told the officers he believed S.V. was exploring herself with his hand.  In a similar vein, Teresa—Montgomery's family friend—testified Montgomery told her "[h]e didn't do anything that [S.V.] didn't initiate first."

While Montgomery intended for his statements to the police to serve as a defense against the allegations made by S.V., the jury could still rely on them to find Montgomery's hand made contact with S.V.'s vagina and the contact was sexual in nature, without finding he undertook the action as a means of sexual gratification.  We think this theory is bolstered by the fact seven-year-old S.V. could twice put the hand of her adult relative between her legs, suggesting Montgomery—for all his statements about putting a stop to it—did not resist the placement or use of his hand.

Without conceding these facts properly support a second-degree sexual abuse conviction, the thrust of Montgomery's argument seems to be that conviction for such an action is unduly harsh.  But, "[s]tatutes regarding sex offenses are common examples of employment of strict liability intended to protect the public welfare."  *State v. Tague*, 310 N.W.2d 209, 211 (Iowa 1981).  They are used to "put the burden upon the person standing in a responsible relation to a public danger even though he might otherwise be innocent."  *Id.*  Montgomery allowing his hand to be used by a young relative to explore herself sexually is one such danger.  *See Smothers v. State*, No. 01-0452, 2002 WL 700959, at *4 (Iowa Ct. App. Apr. 24, 2002) (finding the sexual nature of hand to genital contacts occurring in bed at nighttime could not be disputed if the child was believed).

---

[5] At other times during this same interview, the area Montgomery's hand touched was described as S.V.'s "groin" and "crotch."

The jury's verdicts of acquitting Montgomery of lascivious acts with a child while convicting him of second-degree sexual abuse are not irreconcilable.

**Jury Instruction.** Montgomery maintains the court erred "when it refused to provide proper instructions to the jury in response to the jury's request." But Montgomery did not object to the jury instructions for second-degree sexual abuse or instruction number 16, which provided that "sex act" as used in the instruction on second-degree sexual abuse, means

> . . . any sexual contact:
> Between the mouth of one person and the genitals of another;
> or
> Between the finger or hand of one person and the genitals or anus of another person.
> You may consider the type of contact and the circumstances surrounding it in deciding whether the contact was sexual in nature.

After deliberating for a few hours, the jury submitted a question, "We would like clarification of Instruction No. 16 in regards to the final sentence." At that point, Montgomery told the court, "I do think that perhaps some clarification should be given to the jury as to what 'sexual in nature' means in that the action has to be for the purpose of satisfying the sexual desire of the defendant." The court told the jury further clarification was unnecessary and instructed it to review the instructions as whole.

For the first time in his motion for new trial, Montgomery argued the court "was obligated" to inform the jury of the other relevant circumstances listed by the court in *Pearson* as proper considerations when determining whether contact was sexual in nature. *See* 514 N.W.2d at 455 (listing "other relevant concerns" as "the relationship between the defendant and the victim; whether anyone else was present; the length of the contact; the purposefulness of the contact; whether there

was a legitimate, nonsexual purpose for the contact; where and when the contact took place; and the conduct of the defendant and victim before and after the contact"). Montgomery echoes the argument on appeal.

We conclude Montgomery's argument the court should have instructed the jury on the *Pearson* factors is not preserved for our review. "A motion for a new trial ordinarily is not sufficient to preserve error where proper objections were not made at trial." *State v. Constable*, 505 N.W.2d 473, 477 (Iowa 1993). And "timely objection to jury instructions in criminal proceedings is necessary to preserve alleged error for appellate review." *State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006) (proving ineffective assistance as an exception to the general rule). "Normally, objections to giving *or failing to give* jury instructions are waived on direct appeal if not raised before counsel's closing arguments, and the instructions submitted to the jury become the law of the case." *State v. Fountain*, 786 N.W.2d 260, 262 (Iowa 2010) (emphasis added). While Montgomery urged the court to give the jury a different answer than the court gave, Montgomery did not ask the court to do what he is now claiming it must have done. *See Olson v. Sumpter*, 728 N.W.2d 844, 848–49 (Iowa 2007) ("Even a timely objection to jury instructions will not avoid waiver of error if the objection is not sufficiently specific. . . . The objection must be 'sufficiently specific to alert the trial court to the basis of the complaint so that if error does exist the court may correct it before placing the case in the hands of the jury.'" (altered for readability) (citations omitted)); *see also* Iowa

R. Crim. P. 2.19(5)(f) ("The rules relating to the instruction of juries in civil cases shall apply to the trial of criminal cases.").[6]

We do not consider this further.

**Rape-Shield Law.** Montgomery contends the district court abused its discretion in refusing to admit evidence S.V. was being sexually abused by someone else during the same period she alleged Montgomery did so. *See State v. Walker*, 935 N.W.2d 874, 877 (Iowa 2019) (reviewing trial court's ruling under rule 5.412 for an abuse of discretion).

Through his offer of proof, attached to his motion to admit evidence pursuant to Iowa Rule of Evidence 5.412, and continuing through his several offers of proof at trial, Montgomery established there was evidence the son of S.V.'s mother's boyfriend, who is about four and a half years older than S.V., "licked [her] vagina" when she nine or ten years old. S.V. told the forensic interviewer at the CPC that she told the boy about Montgomery's actions and then the boy started doing those acts to her. Montgomery met his burden to show the evidence he wished to introduce—that another person perpetrated sexual acts on S.V.— actually existed. *Cf. id.* (noting the defendant "failed to make an offer of proof establishing there was in fact an encounter between" the complaining witness and another person; his claim there was an encounter was "simply speculation"). The

---

[6] Montgomery cites Iowa Rule of Criminal Procedure 2.24(2)(b)(5) and (7), which allows a defendant to raise in a motion for new trial the argument the court has misdirected the jury in a material matter of law and has refused to properly instruct the jury. But just because a defendant may raise a claim in a motion for new trial does not mean that defendant is not required to first object during trial or that a motion for new trial is the appropriate way to preserve error for appellate review.

question is whether this evidence was admissible under an exception to the rape-shield law.

*Rule 5.412(b)(1)(A).* One of the exceptions to the general prohibition against introducing evidence of a victim's "other sexual behavior" is "[e]vidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence." Montgomery concedes there was no evidence of physical injury introduced to corroborate S.V.'s claims but argues this exception applies because "Nurse [Karin] Ward reported that trauma and penetration can occur without leaving physical signs" and he "should have been allowed to offer evidence that someone other than he was the source of penetration and trauma reported to Nurse Ward by S.V."

Like the district court, we understand rule 5.412(b)(1)(A) to first require evidence of "semen, injury, or other physical evidence" before the defendant can introduce evidence someone else was the cause.[7] Here, it is undisputed there was no evidence of semen or other physical evidence. And, contrary to Montgomery's assertion, Nurse Ward's report makes no finding of injury. Even if we were persuaded by Montgomery's argument that "trauma" can be a non-physical injury, Nurse Ward's report makes no finding of trauma. She simply points out that lack of physical evidence does not establish penetration or trauma did not occur. Put another way, her report does not say S.V. suffered trauma and

---

[7] We agree with the State that the phrase "the source of semen, injury, or *other* physical evidence" presupposes the existence of physical evidence. *See* Iowa R. Evid. 5.412(b)(1)(A) (emphasis added).

someone must have caused it—as Montgomery suggests. Rather, it conveys that she found no evidence of trauma but that does not preclude S.V.'s claims from being reliable. We agree with the district court that this exception does not apply here.

*Rule 5.412(b)(1)(C).* Montgomery also challenges the district court's ruling under the exception to the rape-shield law that allows the court to admit "[e]vidence whose exclusion would violate the defendant's constitutional rights." Under this exception, Montgomery focuses on evidence the boy perpetrated sex acts against S.V. combined with evidence he wished to offer from Dr. Rosanna Jones-Thurman, a clinical psychologist who opined during an offer of proof:

> I believe that [S.V.] stated a lot of things about the contact with [the boy], which was fairly extensive and ongoing. . . . And, yes, I believe she's contaminated some of her memories about what was going on with [the boy] with what she could have conceived happening with [Montgomery].

Montgomery contends excluding this evidence violated his constitutional right to present a defense. *See State v. Simpson*, 587 N.W.2d 770, 771 (Iowa 1998) (providing the right to present a defense "stems from the Sixth Amendment right to compulsory process" and because it "is incorporated in the Due Process Clause" of the Fourteenth Amendment, "the right is binding on the states").

The scope of the "constitutional rights" exception is not yet clear. Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.412 (Nov. 2020 update). At a minimum, the evidence the defendant seeks to introduce has to be relevant and the probative value must outweigh the danger of unfair prejudice. *See* Iowa R. Evid. 5.412(c)(2)(C); Doré, *Iowa Practice Series: Evidence* § 5.412 ("Iowa courts have repeatedly indicated that an accused does not have a constitutional right to

admit evidence of a victim's other sexual behavior that is irrelevant or whose probative value is outweighed by unfair prejudice."), *see also State v. Smith*, No. 18-1500, 2020 WL 1307693, at *2 (Iowa Ct. App. Mar. 18, 2020) (finding constitutional right to present a defense was not violated by excluding evidence of alleged abuse by defendant's son meant to show confused memories).

Here, we recognize the evidence Montgomery sought to admit had some relevance.  It was not necessary to admit evidence the boy perpetrated sex acts on S.V. to explain her knowledge, as there was evidence introduced at trial that S.V. had seen or been exposed to pornography.  *See Walker*, 935 N.W.2d at 877 ("It is certainly true 'that a child victim's sexual knowledge [that] resulted from an encounter with someone other than the defendant may be relevant and material to a defendant's defense of mistaken identity or false accusation.'" (citation omitted)). But Dr. Jones-Thurman opined that S.V.'s memories involving the boy "contaminated . . . what she could have conceived happening with Montgomery." Assuming the psychologist's testimony was reliable, it has a "tendency to make a fact more or less probable than it would be without the evidence."  *See* Iowa R. Evid. 5.401.

But Dr. Jones-Thurman's testimony—as offered during the offer of proof— was inadmissible.  It would have been impermissible commenting on S.V.'s credibility if the psychologist was allowed to tell the jury she determined the sex acts allegedly committed by Montgomery were just false or contaminated memories from the sex acts perpetrated by the boy.  *See State v. Dudley*, 856 N.W.2d 668, 677 (Iowa 2014) (reaffirming that expert testimony cannot "comment[], directly or indirectly, on a witness's credibility, [because] the expert is

giving his or her scientific stamp of approval [or disapproval] on testimony even though an expert cannot accurately opine when a witness is telling the truth."). Even if evidence is not excluded for falling under the general prohibition of the rape-shield law, it is still "subject to all other applicable evidentiary requirements and considerations." *State v. Alberts*, 722 N.W.2d 402, 410 (Iowa 2006); *see also* Iowa R. Evid. 5.412(c)(2) (providing that if the court determines that the defendant's offer of proof contains evidence described [in the exceptions to the rape-shield law], the court *must conduct a hearing in camera to determine if such evidence is admissible.*" (emphasis added)).

Further, the probative value of evidence of the boy's perpetration of sex acts along with more general testimony from Dr. Thurman-Jones about memory contamination would have been substantially outweighed by a danger of unfair prejudice. *See* Iowa R. Evid. 5.403. S.V. testified during an offer of proof that Montgomery's actions preceded the actions of the boy; she told the boy about what Montgomery was doing and she thought that is why the boy started doing those same acts to her.[8] Additionally, there was no evidence to explain how or why S.V., who knew both the boy and Montgomery well, would have confused the two and their actions. The boy was a teenager, and the acts were said to occur at their shared home; Montgomery is a man with grandchildren who lives in a different town than S.V. S.V. remembered Montgomery's wife being in the bed while

---

[8] In an email Dr. Jones-Thurman wrote, included in Montgomery's offer of proof before trial, she opined, "Memory does not improve with time but in fact becomes more blurred and possibly contaminated with other events and history. Her prior sexual abuse *is important because it also sounds as though it was concurrent with her alleged abuse by Mr. Montgomery*." (Emphasis added.)

Montgomery touched her; she also remembered falling asleep in the bed after watching movies with Montgomery and his wife.

Finally, like *Walker,* the "analysis under Iowa Rule of Evidence 5.403 and harmless error tend to merge" when the pretrial incriminating statements of Montgomery are considered. *See* 935 N.W.2d at 883 (Appel, J., specially concurring) (acknowledging harmless error where there was no prejudice by excluding past evidence of sexual abuse when defendant made admissions of sexual contact). Based on the video evidence where Montgomery described touching the vagina of S.V. to police officers, it does not appear Montgomery's rights were substantially affected or that there was a miscarriage of justice. *See State v. Traywick*, 468 N.W.2d 452, 454 (Iowa 1991) ("When an alleged error is not of constitutional magnitude, 'the test of prejudice [for harmless error] is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice.'" (alteration in original) (quoting *State v. Massey*, 275 N.W.2d 436, 439 (Iowa 1979))).

Because the probative value of the evidence Montgomery sought to admit does not outweigh the danger of unfair prejudice, the district court did not abuse its discretion in excluding the evidence.

**Prosecutorial Misconduct.** Montgomery alleges the prosecutor engaged in prosecutorial misconduct by vouching for S.V.'s credibility during the prosecutor's closing argument. But again, Montgomery did not object when the alleged error occurred. He waited to raise his complaint until after he was convicted by a jury, first bringing up the issue in a post-trial motion. Montgomery recognizes he may have an issue regarding error preservation for this claim and

asks us to consider it under the framework of ineffective assistance if we conclude it was not preserved.

Montgomery's failure to object over prosecutorial misconduct when it allegedly occurred means he failed to preserve error. *See State v. Krogmann*, 804 N.W.2d 518, 526 (Iowa 2011) (concluding defendant failed to preserve claim of prosecutorial misconduct because, while he objected at the time, "[h]e objected only that the question was argumentative" and "asked for no further relief such as a mistrial"), *see also State v. Graves*, 668 N.W.2d 860, 868 (Iowa 2003) ("Because objection was not made at trial, Graves' claim of prosecutorial misconduct is raised on appeal in the context of an ineffective-assistance-of-counsel claim.").

But we also cannot consider it under the framework of ineffective assistance (even if it was sufficiently developed). Disposition was not entered in Montgomery's case until September 2019. So Iowa Code section 814.7 (Supp. 2019), which took effect on July 1, 2019, controls. *See State v. Damme*, 944 N.W.2d 98, 103 n.1 (Iowa 2020) (providing it is the date of the judgment and sentence were entered when determining whether the amended statutes apply). Section 814.7 prohibits us from deciding claims of ineffective assistance on direct appeal. Montgomery can raise this claim in action for postconviction relief, if he chooses. *See* Iowa Code § 814.7. We do not consider it further.

**Sufficiency and Weight of the Evidence.** Montgomery asserts the evidence introduced against him is insufficient to support his conviction for second-degree sexual abuse and the weight of the credible evidence is contrary to his conviction.

We review claims of insufficient evidence to support a conviction for correction of errors at law. *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). Substantial evidence exists to support a verdict when the record reveals evidence that a rational trier of fact could find the defendant guilty beyond a reasonable ddoubt. *Id.* In evaluating this claim, "[w]e view the evidence in the light most favorable to the verdict," including all reasonable inferences that may be deduced from the record. *State v. Gay*, 526 N.W.2d 294, 295 (Iowa 1995).

Review of the trial court's denial of a motion for new trial is for an abuse of discretion. *State v. Nitchter*, 720 N.W.2d 547, 559 (2006). The district court is to weigh the evidence and consider the credibility of the witnesses when deciding this motion. *Id.* If the court determines the verdict is contrary to the weight of the evidence and a miscarriage of justice may have occurred, it is within the court's discretion to grant a new trial. *Id.* But in our review, we consider only whether the district court abused its discretion in its ruling on the motion. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016).

In attacking the sufficiency of the evidence, Montgomery focuses on the lack of physical evidence to corroborate S.V.'s claims and argues Teresa perjured herself and therefore lacks credibility. He also refers to S.V.'s claims as "outlandish." First, we reiterate that we review the evidence in a light favorable to upholding the verdict when considering claims of insufficient evidence. *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). In doing so, "we do not resolve conflicts in the evidence, pass upon the credibility of witnesses, or weigh the evidence." *State v. Hutchison*, 721 N.W.2d 776, 780 (Iowa 2006). And second, even if we did as Montgomery suggests and disregarded the testimony of S.V. and

Teresa, Montgomery's own videotaped statements to the police officers that S.V. twice took his hand and placed it between her legs so she could explore herself with it constitutes substantial evidence to convict him of second-degree sexual abuse. Montgomery does not question the credibility of his own statements to police, so the weight of the evidence also supports his conviction.

**AFFIRMED.**